UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ABED ZAHRAN,

                          Petitioner,                   05 Civ. 6149 (PKC)

         -against-                         MEMORANDUM
                                                            AND
                                                           ORDER

CRAIG APKER, Warden in his Official Capacity,

                          Respondent.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Petitioner Abed Zahran, an inmate at the Federal Correctional Institution in Otisville, New York, seeks a writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. He contends that regulations promulgated by the Federal Bureau of Prisons ("BOP") that govern the placement of inmates in Community Corrections Centers ("CCCs") conflict with the relevant statutory authority and/or violate the Ex Post Facto clause of the Constitution. The regulations in question, and their predecessors, have been the subject of much litigation in this court and others, with courts drawing different conclusions. The Second Circuit has yet to speak on the issue. For the reasons set forth herein, the petition is DENIED.

Background

        On April 5, 2004, in the United States District Court for the Northern District of New York (Hon. Frederick J. Scullin, Jr., Chief Judge), petitioner pled guilty to a three-count Information charging him with: 1) Conspiracy to Distribute Counterfeit CDs and DVDs in violation of 18 U.S.C. § 371; 2) Conspiracy to Distribute Drug Paraphernalia in violation of 21

U.S.C. §§ 846 and 863; and 3) Mail Fraud in violation of 18 U.S.C. § 1341.  On March 24, 2005, petitioner was sentenced by Chief Judge Scullin to a term of 21 months imprisonment, followed by two years supervised release.  Petitioner is currently incarcerated at FCI Otisville, and, assuming he receives all good conduct time for which he is eligible, his projected release date is October 27, 2006.

The Relevant Statutes and Regulations

Section 3621(b) of title 18 requires the BOP to designate the place of imprisonment of those sentenced to prison terms by the district courts.  The statute provides that the BOP may designate "any available penal or correctional facility" meeting certain minimum standards, and lists five factors to be considered in designating a facility.[1]  The statute also provides that the BOP "may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another."  It provides that, in designating a place of imprisonment or making transfers, "there shall be no favoritism given to prisoners of high social or economic status."  18 U.S.C. § 3621(b).

Section 3624(c) of title 18 provides, in relevant part, that the BOP "shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."

---

[1] Those factors are: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence – (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

Prior to December 2002, the BOP had a practice of considering inmates for placement in CCCs for up to six months at the end of their sentences, regardless of the length of such sentences. See, e.g., Lowy v. Apker, 2006 WL 305760 at *1 (S.D.N.Y. Feb 9, 2006). In December 2002, however, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum interpreting the statutes above. The OLC memo concluded that CCC placement "does not constitute imprisonment for purposes of a sentencing order." United States v. Arthur, 367 F.3d 119, 120 (2d Cir. 2004). Thus, the BOP implemented a policy under which placement of inmates in CCCs was authorized only by section 3624(c), and, as such, inmates could not be so placed for more than ten percent of their sentences, and for a maximum of six months (the "December 2002 Policy"). Id.

Several courts, including the First and Eighth Circuits, and some courts in this district, held that the December 2002 Policy was unlawful. See, e.g., Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Pinto v. Menifee, 2004 WL 3019760 (S.D.N.Y. Dec. 29, 2004) (collecting cases). These courts reasoned that section 3621(b) gave the BOP the discretion to place inmates in CCCs at any time during their sentences, and that section 3624 (c) did not limit such discretion. See, e.g., Pinto, 2004 WL 3019760 at *6-*11. Other courts, including this one, upheld the December 2002 Policy as consistent with the relevant statutes and not in violation of the Ex Post Facto clause. See, e.g., Loeffler v. Menifee, 326 F. Supp. 2d 454 (S.D.N.Y. 2004). The Second Circuit, though presented with a challenge to the December 2002 policy, did not reach the issue on the merits. Arthur, 367 F.3d at 122-23.

In response to the decisions of those courts which had held the December 2002 Policy invalid, the BOP adopted, pursuant to the appropriate notice and comment procedures, a

new policy regarding CCC placement, which took effect February 14, 2005 ("February 2005 Policy"). Under that policy, inmates may be designated for placement in CCCs "only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community." 28 C.F.R. § 570.20. Such placements may only be made "during the last ten percent of the prison sentence being served, not to exceed six months," subject to exceptions pursuant to "specific [BOP] programs," none of which are applicable in this case. 28 C.F.R. § 570.21.

In devising the February 2005 Policy, the BOP acknowledged that it did have discretion to place inmates in CCCs prior to the time period specified in section 3624(c). See Community Confinement, 70 Fed. Reg. 1659 at 1660-61 (Jan. 10, 2005). Relying on the Supreme Court's opinion in Lopez v. Davis, 531 U.S. 230 (2001), the Bureau chose, however, to exercise that discretion "categorically" to limit CCC placement to the time periods specified in section 3624(c). Id. at 1661.

The February 2005 Policy, like the December 2002 Policy, has been the subject of more than a few judicial opinions, and, as with its predecessor, courts have split on the issues. Compare, e.g., Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005) (finding policy unlawful as it fails to allow for consideration of the factors enumerated in section 3621(b)) and Lesnick v. Menifee, 2005 WL 2542908 (S.D.N.Y. Oct. 11, 2005) (same) with Lowy, 2006 WL 305760 at *2 (February 2005 policy is proper exercise of categorical discretion and does not violate the Ex Post Facto clause) and Levine v. Apker, 2005 WL 1417134 (S.D.N.Y. May 20, 2005) (same), appeal docketed, No. 05-2590-pr (2d Cir. May 27, 2005);[2] see also Wesson v. Sanders, 2006 WL 648239 at *2, n.2 (E.D. Ark. Mar. 13, 2006) (noting split

---

[2] No decision has yet been issued on the appeal in Levine v. Apker.

of authority and collecting cases).

Discussion

The arguments raised and the relief requested by petitioner are substantially identical to those in the bevy of habeas petitions which have been filed in the wake of the February 2005 Policy. Briefly, petitioner contends that the BOP's interpretation of section 3621(b) is not entitled to the deference normally afforded an agency under the principles of <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984), as there is no statutory "gap" to fill, and the plain language of the statute contrasts with the BOP's interpretation, which would effectively preclude the BOP from considering the statutory factors listed in section 3621(b) in determining whether and when to place an inmate in a CCC. He also contends that the February 2005 Policy, as applied to him, violates the <u>Ex Post Facto</u> clause of the Constitution, presumably since he pled guilty prior to the Policy's taking effect. He requests that the Court order respondent to "consider transferring him to a [CCC] in good faith, in light of the factors set forth in Section 3621(b) without reference to [the February 2005 Policy], and to make this determination promptly."[3]

This Court agrees with those courts that have upheld the February 2005 Policy as consistent with, and a permissible interpretation of, sections 3621(b) and 3624(c). In particular, Judge Casey's analysis in <u>Levine v. Menifee</u>, 2005 WL 1384021 (S.D.N.Y. June 9, 2005) is persuasive. <u>See also</u> <u>Charboneau v. Menifee</u>, 2005 WL 2385862 (S.D.N.Y. Sept. 28, 2005). As Judge Casey noted, not only is the BOP's categorical exercise of its acknowledged

---

[3] Based on the preliminary recommendation of prison staff, petitioner will be potentially eligible for transfer to a CCC "on/after" September 3, 2006. Petitioner contends that, under the pre-December 2002 regime, he would have been eligible for CCC placement as of April 27, 2006, six months prior to his projected release date.

discretion under the statute proper, but the substance of the rule adopted is a reasonable interpretation of the statute. Section 3621(b), while it requires the BOP to designate an inmate to a correctional facility, and while it provides that the BOP may transfer an inmate between facilities, does not obligate the BOP to consider transferring any inmate to any type of facility at any time. Levine v. Menifee, 2005 WL 1384021 at *5. In contrast, section 3624(c) does require that the BOP consider placing inmates in a facility such as a CCC for "a reasonable part" of the last ten percent of his sentence, not to exceed six months. Id. Judge Casey examined the legislative history of section 3621, and concluded that it supported the BOP's reading of the statute. The Court also notes that, in promulgating the February 2005 Policy, the BOP stated that it would "continue to evaluate [the factors listed in section 3621] when making individual designations to appropriate Bureau facilities, and this rule will not adversely affect such individualized determinations." 70 Fed. Reg. at 1660.

Judge Casey also addressed the Ex Post Facto argument advanced by petitioner here, and concluded that the adoption of the February 2005 Policy did not violate the Ex Post Facto clause, as the change effected by the implementation of the policy "does not amount to an increased penalty because it does not have the purpose or effect of enhancing the penalty associated with Petitioner's crime." Id. at *7. This Court agrees. The policy was neither designed to, nor does it have the effect of, increasing the punishment meted out to inmates in their judicially imposed sentences. It has no effect on the length of an inmate's imprisonment, and the potential change in conditions of imprisonment "does not impose the sort of physical and mental suffering" that such conditions as placement in solitary confinement and refusal to inform a condemned inmate of his scheduled date of execution. Id. at *9 (citing In re Medley, 134 U.S. 160 (1890)); see also Lowy, 2006 WL 305760 at *2.

Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 20, 2006